STATE *ex rel.* HAWK *et al. v.* JESSE L. ROGERS.

(*Knoxville.*    September Term, 1916.)

1. ATTORNEY AND CLIENT. Disbarment. Grounds.

The relator owner of land placed it in the hands of defendant attorney for sale, agreeing the attorney should receive one-half of the remainder over the amount of an incumbrance and one-half of any discount procured by defendant on the secured notes. Defendant sold the property representing that it was not incumbered and furnished the purchaser as his attorney an abstract of title apparently good, which did not disclose the incumberance, and received the price which he did not pay to the owner. Subsequently he purchased two of the secured notes at a discount, and, on failing to purchase two more, procured the sale of the land by the trustee under the deed of trust, and purchased it himself at the sale. Defendant failing to comply with the terms of the sale, the property as again readvertised and sold to his wife. This sale was subsequently set aside for fraudulent collusion between the trustee and the defendant. The defendant did not notify the relator purchaser of the sale under the deed of trust. Held, that the transactions constituted a violation of the trust imposed in defendant by relators, owner and purchaser of the land, and that defendant will be disbarred. (*Post, pp.* 579-584.)

2. ATTORNEY AND CLIENT. Summary remedy of client.

While the facts stated against the defendant make out a case of fraud and deceit for which petitioners may recover, they do not make out a case of having received money for which a summary judgment for the amount of the purchase price of the land can be recovered. (*Post, pp.* 584, 585.)

State ex rel. v. Rogers.

## FROM KNOX.

Appeal from the Circuit Court of Knox County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court—Von A. Huffaker, Judge.

Wm. R. Page, for relators.

Jesse L. Rogers, *pro se.*

Mr. Justice Lansden delivered the opinion of the Court.

The defendant is a practicing attorney and a member of the Knox county bar, and the petitioners, W. L. Hawk and Henry Clay Harper, filed a petition in this case to have the defendant disbarred from the practice of his profession, and petitioner Harper seeks to recover a judgment of about $600. The circuit judge and the court of civil appeals have both decreed that the defendant be disbarred, and he has filed his petition for writs of *certiorari* to have those judgments reversed by this court. The facts found by the court of civil appeals are as follows:

"The facts upon which said disbarment is sought are: Some time prior to September 30, 1912, the relator Henry Clay Harper placed in the hands of the defendant, Rogers, for sale a certain tract of

land situated in Knox county, Tenn., containing sixty-five acres. This tract of land was incumbered by a deed of trust, executed by the said Harper on October 7, 1909, to L. R. May, trustee, to secure the payment of four notes, due and payable as follows: One note for $121.15 due October 7, 1910; one for $121.15 due October 7, 1911; one for $121.15 due October 7, 1912; and one for $121.15 due October 7, 1913, all of said notes being payable to Charles W. Wright. Harper told the defendant, at the time of listing said property with him for sale, that the same was incumbered by the deed of trust above mentioned, and it was agreed between the relator and defendant, Rogers, that Rogers should sell said property and satisfy said indebtedness, and that any amount received by the defendant over and above said indebtedness should be equally divided between the relator and the defendant, Rogers; that it was further agreed between said parties that if Rogers were able to purchase said notes secured by said deed of trust, or any of them, at a discount, he was to account to the relator Harper for one-half of such discount in the settlement to be made between them. The defendant, Rogers, got in communication with the relator, W. L. Hawk, and finally sold him the tract of land at the price of $600 on September 30, 1912, the trade being closed in the defendant's office in the city of Knoxville. Hawk says, before closing the trade with defendant for said property, he asked him if there were any incumbrance upon it, to which

inquiry the defendant replied that there was not; that the title was clear. He further says defendant told him that the man who owned the property lived in California, and it would be about two weeks·before he could get a deed executed to the property. Hawk says he employed the defendant as an attorney, to make and furnish him an abstract of title to the property, and paid defendant $25 as earnest money to bind the trade. Defendant was to send·the deed, when executed, with the abstract, to the Farmers' Bank of Sullivan County at Blountville, Tenn., to be delivered to the relator Hawk upon the payment of the balance of the purchase price of $575.

"On October 16, 1912, defendant, Rogers, did send to the Farmers' Bank of Sullivan County a warranty deed duly executed by Henry Clay Harper, together with what purported, on its face to be an abstract of title to said tract of land, but which was, in fact, not an abstract, but only a list of the various conveyances of said property for a number of years back. At the bottom of this purported abstract defendant made this statement:

" 'The above property has passed through H. A. Harth hands and J. W. Saylors, both are wealthy men and all transfers are warrantee deeds, and I find the title O. K.

" '[Signed]                    JESSE L. ROGERS.'

"The relator Hawk, after submitting said deed, which contained a general warranty of title, to his attorney for the purpose of determining whether the

same was in proper form and regular upon its face, and upon being advised that it was, gave his check to the Farmers' Bank of Sullivan County for $575, the balance of the purchase price due for said land; and on the same day, or the day following, the bank forwarded its cashier's check to the defendant Rogers for a like amount, payable to him as attorney. This check was received by Rogers on October 21, 1912, and was deposited in the East Tennessee National Bank of Knoxville. On the day following the reception of this check he went around to the law office of Green, Webb & Tate, who held two of the notes secured by said deed of trust executed by Harper to R. L. May, trustee, for collection, and purchased said two notes at less than their face value, paying for both notes the sum of $200. He then went to J. C. Henderson, who held the remaining two notes, and tried to purchase them at the same discount at which he had purchased the two notes held by the firm of Green, Webb & Tate. Henderson refused to sell the two notes held by him at a discount, and thereafter, on the 25th day of October, 1912, defendant had May, trustee in said deed of trust, to advertise the property for sale, and the property was sold and bid off by the defendant Rogers at the price of $501, but Rogers failing to comply with the terms of sale, the property was again readvertised by May at the instance of Rogers, and was again sold and bid off by Rogers' wife, Sallie Rogers, at the price of $200. This sale was subse-

quently set aside upon a bill being filed in the chancery court of Knox county by Mr. Henderson, the holder of the two notes before mentioned, on the ground that there had been a' fraudulent collusion between the trustee and the defendant, Rogers, in the advertising of said property for the second sale, on account of which he was kept in ignorance of said sale. The relator Hawk says that, notwithstanding he saw Rogers some two or three times after the sale of the property, and was in his office upon one occasion in the month of May, the defendant, Rogers, never informed him of said sale, and he remained ignorant of it for months after it was made.''

The defendant, in his testimony, disputes most of the material facts set out above, but it cannot be said truthfully that there is not ample evidence in the record to support the concurrent finding of the circuit judge and the court of civil appeals. He denies that he agreed with the petitioner Harper, who is a native negro, to sell the land referred to and divide equally with Harper the proceeds in excess of the mortgage indebtedness. He says that Harper listed the property with him for sale, and agreed to give him all over $275 that he might receive for the property. In support of his testimony to this effect, he offers a receipt with Harper's name signed to it for $275 as his portion of the proceeds of the sale. The court of civil appeals found, and we think correctly, that this receipt was not executed by Harper, and of

course is not a corroboration of Rogers' statement. Harper says that in January, 1913, the defendant drew a check in his favor for $275, and requested Harper to go with him to the East Tennessee National Bank, where Harper had the check cashed, the money being paid through the window. He then went to another part of the counting room of the bank and returned the money to Rogers, who redeposited it in the bank. Harper says that he did not receive any part of this $275.

From the foregoing facts it is perfectly plain that the defendant has violated the trust imposed in him both by Harper and Hawk, and has forfeited the right to practice his profession. It has been truly said that the legal profession composes the great unbonded trustee of the human family. It is impossible for this court to permit an attorney to practice his profession and receive the confidence of the public when it is shown that he is unworthy of it. It is always a painful duty to prohibit one of our own profession from exercising the privileges belonging thereto, but painful as it is, it is a duty from which we shall not shrink whenever the facts justify our action.

The assignments of error in this court do not comply with the rules regulating such assignments. They nowhere cite the evidence or pages of the transcript where the errors claimed against the decree of the court of civil appeals can be found. It is true that citations to the transcript are found in the general argument of the assignments of error, but none are

State ex rel. v. Rogers.

found in the assignments themselves. However, we have treated the assignments as good, and have examined the opinion of the court of civil appeals and the record cited against it. This record, on the material facts, consists chiefly of the statements of the defendant, but the incriminating facts and those which show defendant unworthy of his profession are testified to by the petitioners Hawk and Harper, and are evidenced by writings signed by the defendant, or which he admits that he knew. The assignment of error made by the petitioner Hawk is not good. The court of civil appeals properly overruled it. The facts stated against the defendant make out a case of fraud and deceit for which petitioners may be entitled to recover, but they do not make out a case of having received money for which a summary judgment can be recovered.

The court of civil appeals is affirmed.